UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| TARA J. RODGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | Case No. 1:26-cv-00087-SNLJ |
| CATHERINE J. DESANTO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Tara J. Rodgers filed this lawsuit in the Circuit Court of Stoddard County, Missouri, asserting claims under state law and 42 U.S.C. § 1983 against employees of the Missouri Department of Social Services. [Doc. 3]. The defendants removed the case to this Court on the basis of federal question jurisdiction. [Doc. 1]. This matter is now before the Court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(c) asserting official immunity to the wrongful death claim and qualified immunity to the § 1983 claim. [Doc. 12]. For the reasons set forth below, the motion is granted as to the § 1983 claim, and the remaining state law claim is remanded to state court.

## I. Background

This case arises out of the death of F.L., the daughter of plaintiff Tara J. Rodgers. [Doc. 3, ¶ 2]. F.L. was taken into the custody of the Missouri Department of Social Services, Children's Division on March 3, 2022. [*Id.* at ¶ 6]. Defendants, Children's Service workers for MDSS, placed F.L. with foster parents ("relative resource providers")

on July 1, 2022. [*Id.* at ¶ 12]. After an initial inspection of the foster parents' premises, defendant Wasson noted that the above ground swimming pool was not in compliance because it did not have side barriers or a safety device to restrict access. [*Id.* at ¶ 11]. She then noted that the pool must be brought into compliance or taken down. [*Id.*]. On July 11, 2022, defendant Wasson visited the foster parents' home, again noting that the swimming pool was not in compliance with MDSS safety requirements. [*Id.* at ¶ 15]. On July 16, 2022, defendant Desanto visited the foster parents' home and also observed a swimming pool that was still not in compliance with MDSS safety requirements. [*Id.* at ¶ 16]. Additionally, the defendants knew that one of the foster parents "had a history of chemical dependency and was taking prescribed methadone for the treatment of his opioid addiction." [*Id.* at ¶ 12].

On July 16, 2022, F.L. was left unsupervised and drowned in the swimming pool; she died on July 17, 2022. [*Id.* at ¶¶ 1, 17]. F.L. was 20 months old at the time of her death. [*Id.* at ¶ 2]. On or after July 17, 2022, the foster dad messaged defendant Wasson stating ". . . all I keep thinking is why we didn't just take it down." [*Id.* at ¶ 18]. She responded, "But you were taking it down…accidents happen. [I] should have had Katie [defendant Desanto] place them somewhere else until you did, that's where I am at fault." [*Id.*].

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief may be granted. When considering a Rule 12(b)(6) motion, the court assumes a plaintiff's well-pled factual allegations to be true

and makes all reasonable inferences in the plaintiff's favor. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). Further, the court "must liberally construe a complaint in favor of the plaintiff." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, the court does not accept as true legal conclusions or "threadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

To survive a Rule 12(b)(6) motion, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining if well-pled factual allegations "plausibly give rise to an entitlement to relief" is a "context-specific" task requiring the court to "draw on its judicial experience and common sense." *Id.* at 679, 682. However, "[t]he well pled facts must establish more than a mere possibility of misconduct." *Iqbal,* 556 U.S. at 697 (cleaned up). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

## III. Discussion

The Court will first address the § 1983 claim because it is the basis for jurisdiction in this Court. Defendants argue that they are protected by qualified immunity and, therefore, the § 1983 must be dismissed. [Doc. 12]. "Because qualified immunity is an

affirmative defense, . . . it will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Watkins v. City of St. Louis, Missouri,* 102 F.4th 947, 951 (8th Cir. 2024). "To overcome qualified immunity at the motion to dismiss state, a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (cleaned up).

"The threshold question is whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officials' conduct violated a constitutional right." *Id.* Plaintiff alleges the defendant violated F.L.'s "constitutional right to receive protection and supervision while in custody of the State of Missouri" – a substantive due process claim. [Doc. 3]. Defendants argue that the allegations in the petition do not sufficiently plead a substantive due process claim.

The state has an obligation to protect children in state foster care. *James ex rel. James v. Friend,* 458 F.3d 726, 730 (8th Cir. 2006). "A custodial relationship is created when a child is placed in foster care." *Id.* "In the context of this custodial relationship, a substantive due process violation will be found to have occurred only if the official conduct or inaction is so egregious or outrageous that it is conscience-shocking." *Id.* Furthermore, "officials' conduct will not be found to be conscience-shocking unless the officials acted with deliberate indifference." *Id; see also Moore ex rel. Moore v. Briggs,* 381 F.3d 771, 773 (8th Cir. 2004) ("[Officials'] conduct *may* shock the conscience of federal judges only if they acted with 'deliberate indifference'"); *S.S. v. McMullen,* 225

F.3d 960, 964 (8th Cir. 2000) ("[D]eliberate indifference, depending on the circumstances and the kind of deliberation and indifference involved, might well shock the conscience."). "Deliberate indifference will be found only if the officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and the officials actually drew that inference." *James ex rel. James,* 458 F.3d 726 at 730. "Mere negligence or even recklessness by a public official is not enough to shock the judicial conscience." *Id.*

Here, it is alleged that defendants placed F.L. with the relative foster parents in knowing violation of a long list of Children's Division rules, safety policies, and standards that can be categorized as follows: (1) the foster parents had an above-ground pool without side barriers, (2) one of the foster parents had a history of chemical dependency, and (3) the foster parents had not received various trainings. Plaintiff bases her allegation that defendants' conduct "shocked the conscience" with "deliberate indifference" mainly on the facts that the pool had no side barriers and that there was clearly a failure to supervise the child. All agree that those are the primary facts that directly led to the fatality. On the other hand, plaintiff does not allege just how the foster parent's chemical dependency directly led to the fatality but rather infers, with much speculation, that the failure to supervise the child was due to the parent being impaired. The same goes for the allegations that the parents failed to receive various trainings. There is no allegation of a direct connection between the trainings that should have occurred and the actual failure to supervise, only inference and much speculation. Here at the pleading stage, there is no allegation that the chemical

dependency and lack of training did indeed cause the fatality. Again, the "well-pled facts" need to "establish more than a mere possibility" that they did. *Iqbal*, 556 U.S. at 679.

Again, the core allegations are that the fatality occurred because of presence of an above-ground pool without side barriers in violation of Children's Division safety policies and a failure of the foster parents to supervise the child. The ultimate question, then, is whether the defendants' failures to rectify the situation "shocked the conscience" and amounted to "deliberate indifference." To be sure, it is highly unlikely that a toddler will drown despite a non-compliant pool, the chemical dependency of one of the foster parents, and a failure to adequately train the foster parents. Obviously, relative foster parents can almost always be relied upon to provide adequate supervision over a toddler, at least to prevent the kind of tragedy that occurred here. After all, the risks listed in the petition are certainly matters of common sense that all persons would be aware of. For these reasons, this Court finds that the failures on the part of the defendants do not shock the conscience.

As to the issue of deliberate indifference, this Court is at a loss to find how the defendants' action amounted to indifference, much less that the indifference was deliberate. The defendants recognized the hazard of the above ground pool at the first inspection, noting that it must be brought into compliance or taken down. They did so again after two more inspections. They were not indifferent to the need to remove the hazard. As noted, all were well aware—the defendants and the foster parents—that the pool must come down. And as set out in the petition, the day after the fatality, the foster

dad messaged defendant Wasson, stating ". . . all I keep thinking is why we didn't just take it down." [Doc. 3 at ¶ 18]. Wasson responded, "*But you were taking it down*…accidents happen [emphasis added]. [I] should have had Katie [defendant Desanto] place them somewhere else until you did, that's where I am at fault." [*Id.*]. The defendants' failure to secure compliance from the foster parents before the accident does not rise to the level of deliberate indifference.

Because plaintiff has not pled facts showing a violation of a constitutional right, defendants are entitled to qualified immunity, and the § 1983 claim will be dismissed. Without a claim over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the wrongful death claim. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction.").

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [Doc. 12] is **GRANTED in part** and **Count II** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to exercise supplemental jurisdiction over the state law claim in **Count I**.

**IT IS FURTHER ORDERED** that this action, which now consists only of the state law claim in **Count I**, is **REMANDED** to the 35th Judicial Circuit Court, Stoddard County, Missouri, from which it was removed, based on a lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).

**IT IS FINALLY ORDERED** that the Clerk of Court is **DIRECTED** to **CLOSE** this case.

**SO ORDERED** this 15th day of October, 2026.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE